DOCUMET VACATED PER COURT'S ORDER #81

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | NO. 3:06-CV-755 PS |
| MARK R. VOGT, LORI A VOGT, FIRST ) | |
| FRANKLIN FINANCIAL CORP., and ) | |
| JUDY A. DAVIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Mark Vogt owes unpaid taxes and penalties to the United States Government for over $300,000. The government seeks to collect on its judgment against him by foreclosing tax liens through a judicially-enforced sale of his home under § 7403 of the Internal Revenue Code. Mark's wife, Lori, wants to block the forced sale because she resides in the home and claims she would be undercompensated by the sale and that she and her children would be subject to undue hardship through no fault of their own. Through multiple settlements, the case has been whittled down to the government versus Lori, and the government now moves for summary judgment. There is a bare-bones record before me and certainly not enough evidence to grant summary judgment for the government. Accordingly, the government's motion is denied.

## FACTUAL BACKGROUND

On May 12, 2008, I granted the government's Rule 54(b) motion for entry of judgment against Mark. (DE 41.) Pursuant to that Order, Mark is now liable for unpaid federal income taxes and penalties as follows:

| | |
|---|---|
| 1998 | $24,003.55 |
| 1999 | $23,104.53 |

|      |              |
|------|--------------|
| 2000 | $99,336.80   |
| 2001 | $31,016.41   |
| 2002 | $45,792.39   |
| 2003 | $42,700.99   |

(*Id*. at 1-2.) He also owes a $100,994.94 penalty under 31 U.S.C. § 5321(a)(5). (*Id*. at 2.)

Because the federal tax liabilities remain unpaid, liens have been attached to Mark's interest in his home, located at 3308 Nutmeg Road in Plymouth, Indiana. Mark's interest in that property is a joint tenancy shared with his wife, Lori. (*See* DE 50 at 4.) The home is subject to a mortgage, the note for which states that Mark and Lori owe First Franklin $171,000. (DE 50-2 at 5.) Under Indiana law, the joint tenancy gives Lori a 50% share in the case of judicially-enforced sale. *See In re Guardianship of Atkins*, 868 N.E.2d 878, 888 n. 4 (Ind. Ct. App. 2007). Due to a stipulation entered between the government and First Franklin, the proceeds from a sale would be distributed first to First Franklin (due to equitable subrogation) for $110,935.89 for application to the unpaid mortgage obligation. (DE 53 ¶¶5-6.) The remaining proceeds (if any) would be split in half, where the first half would be distributed again to First Franklin to further satisfy the mortgage and the remainder of that half would go to Lori. (*Id*.) The second post-$110,935.89 half would be distributed among the government for the tax liabilities and again to First Franklin. (*Id*.)

Lori is a non-liable third party. She is not employed outside the home and she has either raised or is raising her two children exclusively at that property. (*See* DE 50-2.) Lori also claims to suffer from certain medical ailments, although the seriousness of those ailments is not clear. (*See* DE 50 at 12; DE 50-2 ¶¶8-10.)

**DISCUSSION**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1004 (7th Cir. 2000). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When examining the evidence, the court resolves all ambiguities and draws all inferences in favor of the non-moving party. *Haefling v. United Parcel Serv., Inc.,* 169 F.3d 494, 497 (7th Cir. 1999); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir. 1994).

Section 7403 of Title 26 states, in relevant part, that a district court "may decree a sale of such property" and order the proceeds distributed "according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c). Under that section, courts have the power to order a sale even if a non-liable third party objects. *United States v. Rodgers*, 461 U.S. 677, 680 (1983). But because the statute provides that a court "may" order the sale, the Supreme Court concluded it "does not require the court" to do so in "absolutely all circumstances." *Id*. at 706. In other words, there is "some limited room . . . for the exercise of reasoned discretion." *Id*.

That limited discretion is meant to account for both the government's interest in the "prompt and certain" collection of outstanding tax debts as well as the interests of innocent third parties. *Id*. at 709. Thus, a "particularized equitable assessment" is appropriate, *id*., through which district courts are expected to find an "individualized equitable balance," *id*. at 712.

3

*Rodgers* provided some guidance for the use of the district court's limited discretion by articulating "a certain fairly limited set of considerations [which] will almost always be paramount" in weighing the competing interests. *Id*. at 709-10. The considerations are:

> 1) the extent to which a sale only of the delinquent taxpayer's partial interest would prejudice the government's financial interests; 2) whether the third-party interest holder in the property has a reasonable expectation that her property would not be subject to forced sale by the delinquent taxpayer or his creditors; 3) the extent of prejudice to the third-party interest holder in terms of relocation costs and in practical undercompensation; and 4) the relative character and value of the liable and nonliable interests in the property.

*U.S. v. Davenport*, 106 F.3d 1333, 1337 n.6 (7th Cir. 1997) (citing *Rodgers*, 461 U.S. at 710-11). *Rodgers* noted that this is not a "mechanical checklist to the exclusion of common sense and consideration of special circumstances." 461 U.S. at 711 (internal quotation omitted). One such common sense consideration is "the fact that in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head." *Id*. at 704-05. But *Rodgers* emphasized that the "limited discretion" to refuse a sale under § 7403 "should be exercised *rigorously and sparingly* keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id*. (emphasis added).

The Seventh Circuit has interpreted *Rodgers* to mean that the "district court's discretionary power to refuse a sale . . . is very limited." *Davenport*, 106 F.3d at 1338. In fact, it has held that the "[a]pplication of [the *Rodgers* factors] is not a prerequisite" to ordering a sale under § 7403. *Id*. Rather, consideration of the hardship on a non-liable third party is "a matter of judicial grace, not entitlement." *Id*. Moreover, it has noted that *Rodgers* did not limit a court's discretion to order a sale, but rather limited a court's discretion *to refuse to order* a sale. *Id*. at 1338 n.7. Thus, it is with concern for Lori's rights, but also with the understanding that my

4

discretion is particularly limited, that I evaluate the *Rodgers* factors and the propriety of summary judgment.

The first factor is difficult to evaluate on the record before me. The government claims that the factor weighs in its favor because any sale of Mark's 50% interest would necessarily be for less money than half the pot from a sale of 100% of the property. The government provides no evidence (expert testimony or otherwise) to support this assertion, and instead only relies on analysis from other district courts. (*See* DE 54 at 6.) While it is unlikely that there is a hot market for a 50% joint tenancy interest in the property, it seems at least possible that real estate speculators may have a desire to buy such an interest. That might be a stretch, but I have no evidence to the contrary and it is the government that bears the burden on its motion for summary judgment.[1] Moreover, *Rodgers* noted that "even when the partial interest would be worth *less* sold separately than sold as part of the entire property, the possibility of prejudice to the Government can still be measured as a matter of degree." 461 U.S. at 710 (emphasis in original). The government has not measured the potential prejudice. Thus, I cannot really evaluate this factor on the present record. But even assuming that it weighs in the government's favor (which I cannot do on summary judgment), it is still not enough to overcome the other unanswered questions I have.

The second factor is clearly in the government's favor. Lori does not dispute that her

---

[1] The government asserts that once it has established the existence of a tax lien, the burden is on the third party to persuade the Court that foreclosure should not be ordered. (*See* DE 54 at 5-6.) While this will be true at trial, it is not the case under the current procedural posture of this case. Because the government has moved for summary judgment, it is *the government's* burden to demonstrate that there are no genuine issues of material fact. All Lori has to do is establish that there are genuine issues of material fact that will impact my decision to exercise my discretion under § 7403 and *Rodgers*.

interest is as a joint tenant in the home – an interest governed by Indiana Code § 32-17-4-1. (DE 50 ¶4.) Because § 32-17-4-1 allows for joint tenants to seek partition, Lori has never had a legally recognized expectation that her property could not be subject to forced sale.

At this stage of the litigation, the third *Rodgers* factor, which considers both personal dislocation costs and practical undercompensation, weighs in favor of Lori. Lori's two children reside with her at residence. (*See* DE 50-2 ¶11.) It's unclear from the record if they are minor or dependent children because their precise age and legal disposition is not in the record. Lori has declared that this home is the only one the children have known, (*id*. ¶23), and that she has resided in the home since it was purchased, (*id*. ¶3). The date on the mortgage is June 7, 2005. (*Id*. ¶17.) So on the one hand it seems the children could be as young as two or three years old. But Lori also states her husband and father built the home between 1984 and 1990, (*id*. ¶5), so perhaps the children are in their late teens or perhaps even their early twenties. I have no idea. The children's ages is an easily discoverable fact, but their level of dependency on Lori and the home may not be so simple. Regardless, the government does not provide any additional facts to help me evaluate the impact Lori's children may have on her dislocation costs. If the children are indeed very young, or continue to be dependent, or both, the dislocation costs and general unfairness of forced sale could be significant equitable factors.

In addition, the record suggests Lori may suffer other dislocation costs. In particular, Lori has indicated that she is not in good health, (*see* DE 50-2 ¶¶8-11), and that she is not employed outside of the home, (*see id*. ¶11). While she has not given me any detail regarding these assertions (such as the overall seriousness of her health issues and whether she works within the home or has the potential to obtain employment), the government does not show that

6

there isn't a genuine issue of material fact about them. Other courts evaluating § 7403 foreclosures have found these issues to be relevant. *See, e.g.*, *U.S. v. Jones*, 877 F. Supp. 907, 918 (D.N.J. 1995) ("To dispossess an unemployed individual who has no source of income and who still has a minor son residing with her at her home in order to satisfy a debt owed by her husband presents a grossly unfair solution and one that violates New Jersey's policy of protecting the marital home."); *U.S. v. Jensen*, 785 F. Supp. 922, 924-25 (D. Utah 1992) (concluding that "depriving [the third party] of the roof over her head would be a significant hardship" given her medical condition). And on a motion for summary judgment I must resolve this ambiguity in favor of the non-moving party. *Haefling,* 169 F.3d at 497. Thus, I find that there are genuine issues of material fact regarding Lori's dislocation costs.[2]

The fourth *Rodgers* factor does not weigh in favor of either side. Although the government claims the factor concerns only "a situation in which the co-owner with the tax liability held only a relatively small percentage interest in the property," (DE 54 at 10), all *Rodgers* really does is lay out the clear boundaries of the relative interests factor. Here's how the Court put it:

> If, for example, in the case of real property, the third party has no present possessory interest or fee interest in the property, there may be little reason not to allow the sale; if, on the other hand, the third party not only has a possessory interest or fee interest, but that interest is worth 99% of the value of the property, then there might well be virtually no reason to allow the sale to proceed.

*Rodgers*, 461 U.S. at 711. Neither of these situations exist here. In fact, since the interest in this

---

[2] To the extent this factor concerns a purely financial analysis, and these concerns therefore exceed its scope, they are still relevant because the *Rodgers* factors are not a "mechanical checklist to the exclusion of common sense and consideration of special circumstances." 461 U.S. at 711.

7

case is a clean 50/50 split, the fourth *Rodgers* factor has no weight at all.

The record before me shows that Lori is a non-liable party and is a mother of two children living in a home built by her husband and father with their own hands. (*See* DE 50-2 ¶¶3-5.) Those facts alone do not mean that I will ultimately use my limited equitable discretion to block the sale of the roof over her head, but they give me pause. Perhaps there is in fact no market for Mark's independent interest in the home such that there is a great prejudice to the government. Perhaps Lori is sufficiently well-supported financially to overcome the dislocation costs. Perhaps her children are at or near the age of majority or independence such that they are a non-factor. Any number of undeveloped facts may block or trigger my limited equitable discretion in this case.

None of this means the government cannot make its case for forced sale. Rather, it simply means that, in this "individualized" matter, *see Rodgers*, 461 U.S. at 711, the government has failed to prove that there are no genuine issues of material fact. For a proceeding that is rooted in equity, and therefore inherently fact-intensive, I simply do not have a complete enough picture to forego my equitable discretion and order foreclosure at this stage.

## CONCLUSION

For the reasons given above, the government's motion for summary judgement [DE 44] is **DENIED** and the case remains set for bench trial on October 14, 2008.

**SO ORDERED**.

ENTERED: September 15, 2008

s/<u>Philip P. Simon</u><br>
PHILIP P. SIMON, JUDGE<br>
UNITED STATES DISTRICT COURT

8